## THE ALVAH.

### MORRIS v. THE ALVAH.

(Circuit Court of Appeals, Second Circuit. December 8, 1896.)

1. SHIPPING—APPOINTMENT OF SHIP'S AGENT—CHARTERS.

A firm in London wrote to the owners of the steamer A., saying, "Confirming our conversation to-day, we have fixed the A., Boston to London," on terms specified; adding: "⅔ds of 5 per cent. brokerage for us, as agents. We to report the steamer in London." The ship was sent for the voyage accordingly. *Held*, that this letter was not a charter of the ship to the firm, but, on the contrary, showed the appointment of the firm as the ship's agents for the voyage, and that, as such agents, they had authority to bind her by a stipulation that she could carry a given number of cattle.

2. SAME—CONTRACT TO CARRY CATTLE—VENTILATION.

In a contract for the transportation of cattle, it is implied that the space allotted to the cattle shall be sufficiently ventilated; and if there is not sufficient ventilation in certain compartments, so that insurance can be procured upon the cattle to be placed therein, the shipper may refuse to ship them, and may recover damages for failure to transport them under the contract.

3. SAME—PROOF OF INSUFFICIENT VENTILATION—REFUSAL OF INSURANCE.

The mere fact that a single firm of underwriters refused to insure cattle for the voyage, because of alleged insufficiency of ventilation, is not, of itself, and in the absence of direct proof as to the amount of ventilation, satisfactory proof of a breach of contract on the vessel's part, warranting the shipper in refusing to send the cattle.

Appeal from the District Court of the United States for the Eastern District of New York.

This is an appeal from a final decree of the district court for the Eastern district of New York, entered August 26, 1895, in favor of the libelant, for the sum of $1,666.57, damages for breach of contract to carry cattle by the steamship Alvah, resulting from the shutting out of 42 head.

J. Parker Kirlin, for appellant.

David Thomson, for appellee.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The contract sued upon was entered into May 1, 1889, by the libelant and Brigham & Pillsbury; and, at the time it was made, libelant had no knowledge as to who were the owners of the Alvah, nor as to the circumstances under which the voyage in question was to be performed. Brigham & Pillsbury, however, signed as agents; and their undisclosed principals, if such

they were, would be bound by a contract made by the agents within the scope of their authority. Brigham & Pillsbury acted as agents under the employment of T. C. Lawrence & Co., of London; and it is apparent from the evidence that the rates of freight, and statement of the number of cattle to be carried, were arranged in accordance with advices received from the London firm. The real question in the case is whether T. C. Lawrence & Co., in consigning the ship to Brigham & Pillsbury, and in authorizing the entry into this contract on its behalf, acted as agents of the owners, or as principals who had themselves chartered the ship from the owners. The only agreement between the owners and Lawrence & Co. relative to the voyage in question is a written letter, undated, but which, as may fairly be inferred from its terms, was written when Lawrence & Co. had been advised by their agents, Pillsbury & Brigham, what engagement they could make for the ship. The letter is as follows:

Messrs. Adam Brothers—Dear Sirs: Confirming our conversation to-day, we have fixed the Alvah, Boston to London, moderate dispatch in Boston,—say inwards and outwards in 7/9 days from date of arrival. Homeward cargo will be a full cargo. 15/– for sack flour and oil cake. 22/6 for provisions. 20/– for canned goods. 30/– for cheese, butter, and lard, &c. 4d. for grain, per bushel of 60 lbs. 75/–, 80/–, for cattle, including upper deck; shippers *& attend supplying fittings, fodder, & attendance. No freighting brokerage. ⅔ds of 5 per cent. brokerage for us and agents. We to report the steamer in London.
     Yours, faithfully,                     T. C. Lawrence.
  * We named fittings, fodder, &c. We suppose this would include attendance.

We do not find in this agreement a charter of the ship to Lawrence & Co. On the contrary, it indicates quite clearly an appointment of Lawrence & Co. as agents of the ship for the voyage; they to secure cargo at not less than certain specified rates, which they guarantied, and their remuneration to come, not from securing better rates and retaining the difference, but from a commission of two-thirds of 5 per cent., to be paid them by the owner, who was himself to receive the whole freight. Such an agreement authorized the agents to bind the ship, within the limits indicated, by such stipulations as are usual in such cases. A stipulation that the vessel's capacity to carry specific varieties of cargoes is thus and so, is common in such cases. And the statement contained in the contract with libelant, that the ship would carry about 370 head of cattle on between-decks and upper deck, was in no sense an excessive engagement. The ship did have abundant carrying capacity for that quantity of cattle, the only question being whether the cattle so carried would be afforded sufficient ventilation. That it was practicable to increase the facilities for ventilation, is not disputed, the contention of the ship being that the existing facilities were quite sufficient.

We concur with the district judge in his conclusions that "it cannot be doubted that, in a contract for the transportation of cattle, it is implied that the space allotted to the cattle for the voyage shall be sufficiently ventilated," and that "if the act of the insurance company in refusing to insure cattle placed in the after part of Nos.

2 and 3, without the additional ventilators, was justified by the facts, the shipper was not bound to ship more than 332 cattle, and can recover for the failure of the ship to transport the additional 42 head called for by the contract." There does not seem, however, to be in the record satisfactory proof of a breach of the contract. Upon the question whether the after part of Nos. 2 and 3 was, as a matter of fact, sufficiently ventilated or not, we find no evidence at all; and it is not clear that any effort was made to effect insurance, except with a single company of underwriters, whose refusal to take the risk might, for aught that appears in the record, have been captious. Ordinarily, under these circumstances, in reversing the decree, this court woud direct a dismissal of the libel. The difficulty with the record, however, seems to have been caused by the circumstance that much of the testimony is in the form of stipulations as to what witnesses not called would swear to, if examined, and counsel may not unnaturally have been misled as to the effect of the language used in such stipulations. Under these circumstances, the ends of justice will be better subserved by remanding the cause to the district court, with instructions to take further testimony touching the alleged breach of contract, and enter its decree in accordance with the facts proved. It is so ordered.